UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

VAAMBEE YANG and
YEE X. YANG,

                  CIVIL NO. 13-2026 (PJS/JSM)

      Plaintiffs,

v.

                  <u>REPORT AND RECOMMENDATION</u>

FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

      Defendant.

This matter came before the undersigned on defendant Federal National Mortgage Association's Motion to Dismiss [Docket No. 9]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A),(B) and Local Rule 72.1(c). Pursuant to this Court's Order dated September 6, 2013 [Docket No. 15], this Report and Recommendation is being issued based on the parties' written submissions.

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendant: (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title. For the reasons stated below, the Court recommends that defendant's Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

## I.    BACKGROUND

### A.    <u>Plaintiffs' Complaint</u>

The facts bearing on the motion to dismiss are as follows: On December 21, 2005, plaintiffs executed and delivered a note to Countrywide Home Loans, Inc. ("Countrywide") on property located in Saint Paul, Minnesota ("Property"). <u>See</u>

Complaint [Docket No. 1], ¶ 4.  On the same day, plaintiffs executed a mortgage in favor Countrywide.  Id., Ex. 1 (Mortgage).  The mortgage was recorded with the Ramsey County Recorder on January 13, 2006.  Id.  Countrywide identified MERS as its nominee of the mortgage.  Id.

The law firm of Shapiro & Zielke ("Shapiro") drafted an Assignment of Mortgage from Countrywide to BAC Home Loan Servicing, LP ("BAC") f/k/a Countrywide Home Loans Servicing.  Id., ¶ 17, Ex. 4 (Assignment of Mortgage).  Michelle Johnson, as the Assistant Vice-President of Countrywide, executed the Assignment of Mortgage on June 30, 2011.  Id.  The Assignment of Mortgage was recorded with the Ramsey County Recorder on July 7, 2011.  Id.

On October 11, 2012, Shapiro drafted a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage.  Id., ¶ 18, Ex. 5 (Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage).  Michelle Reese, Assistant Vice President, Bank of America, N.A. ("BOA"), successor by merger to BAC, f/k/a Countrywide Home Loans Servicing LP, executed this document and it was recorded with the Ramsey County Recorder on October 23, 2012.  Id.

On December 20, 2012, Shapiro, on behalf of BOA, appeared at the sheriff's sale for the Property.  Id., ¶ 19, Ex. 6 (Sheriff's Certificate and Foreclosure Record).  Shapiro represented in the Sheriff's Certificate that BOA had legal authority to make a bid at the sale.  Id.  Plaintiffs deny that BOA had any right to exercise the power of sale by bidding in debt due on the note, and deny that it had the right to enforce the note.  Id., ¶ 19.

On March 8, 2013, BOA assigned its interest to Fannie Mae through an Assignment of Sheriff's Certificate.  Id., ¶ 20, Ex. 7 (Assignment of Sheriff's Certificate).

2

Bradley Frank Catalano executed the assignment, as the Vice President of BOA, and the assignment was recorded on March 14, 2013, with the Ramsey County Recorder. Id.

Plaintiffs alleged that Fannie Mae acquired its interest in the mortgage close to time of the origination of the loan and prior to foreclosure of the Property, as evidenced by the MERS look-up sheet that lists Fannie Mae as an investor and Bank of America, N.A. as the servicer of the mortgage, and by Fannie Mae's Custodial Agreement. Id., ¶¶ 7, 11, Ex. 2 (screen shot dated July 25, 2013),[1] Ex. 3 (form Custodial Agreement). Therefore, because no assignment to Fannie Mae appears in the records of the Ramsey County Recorder, BOA conducted an invalid foreclosure on behalf of Fannie Mae. Id., ¶¶ 11, 19.

According to plaintiffs, Fannie Mae is a government-sponsored enterprise that purchases mortgages on the secondary market, pools the mortgages, and sells them as mortgage-backed securities to investors. Id., ¶ 8. Fannie Mae's Custodial Agreement requires that the lender deliver to the custodian a completed and executed assignment to Fannie Mae of the mortgage in a recordable but not recorded format, and an executed power of attorney to Fannie Mae to assign the mortgage. Id., ¶, 9, Ex. 3 (Form Custodial Agreement). Plaintiffs claimed that per the Custodial Agreement, Fannie Mae's alleged predecessor in interest prepared and delivered an assignment of the Mortgage to Fannie Mae, which conferred the power of sale to Fannie Mae. Id., ¶

---

[1]     Plaintiffs described this document as a "MERS lookup for the subject property." Complaint, ¶ 7. This same screen shot was attached to the Declaration of William Butler [Docket No. 17-1], Ex. 2, and is dated July 25, 2013.

12.  The failure to record the assignment to Fannie Mae violated Minn. Stat. § 580.02, and precludes the commencement of a foreclosure by advertisement.  Id., ¶ 16.

Plaintiffs also alleged that on or about April 13, 2011, Fannie Mae received constructive notice of a Consent Order with the Officer of Comptroller of the Currency ("OCC") identifying "unsafe and unsound" banking practices by BOA in connection with certain foreclosures in its mortgage service portfolio.  Id., ¶¶ 21, 22, Ex. 8 (Consent Decree).

Plaintiffs asserted that the foreclosure of the Property is void because Fannie Mae and its agent, BOA, failed to record the executed assignment of mortgage to Fannie Mae prior to the foreclosure; the June 30, 2011 Assignment of Mortgage is void, as it claims that BAC is the attorney-in-fact of Countrywide and there is no record of this power being recorded in violation of Minn. Stat. § 580.05; and the October 11, 2012 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage is void because BOA did not hold the power of sale.  Id., ¶ 24.

Plaintiffs also alleged that Fannie Mae at all times knew, or had reason to know, that it was in full possession of an executed assignment of mortgage, the June 30, 2011 Assignment of Mortgage and the October 11, 2012 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage were void, and that the foreclosure violated Chapter 580 of the Minnesota Statutes.  Id., ¶ 25.

Plaintiffs asserted the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiffs plead a quiet title action seeking a determination regarding Fannie Mae' adverse interests in the Property.  Id., ¶¶ 26-36.  According to plaintiffs, in a quiet title action, where they are

4

in possession of the Property, pursuant to state law, the burden of proof is on the defendant asserting an adverse interest in the property to prove its title to the mortgage by a preponderance of the evidence.  Id., ¶¶ 28-35.

In Count II, plaintiffs seek a declaratory judgment under Minn. Stat. § 555.02 that the Assignment of Mortgage, Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage, Fannie Mae's interest in the Property and the Sheriff's Certificate of Sale are all void, and that plaintiffs remain the owner of the Property in fee title.  Id., ¶¶ 38, 39.

In Count III, alleging slander of title, plaintiffs asserted that Fannie Mae[2] drafted and recorded documents that are false, and that as Fannie Mae knew or should have known that the documents were false, this conduct amounted to a reckless disregard for the truth.  Id., ¶¶ 40-43.

As relief, plaintiffs sought: (1) a determination of adverse interest in the Property; (2) a declaration that the mortgage, the Sheriff's Certificate of Sale, the assignment of mortgage, notice of pendency, and power of attorney are all void; (3) a declaration that plaintiffs remain the owner of the Property in fee title; and (4) money damages.  Id., Prayer for Relief.

Fannie Mae moved to dismiss the Complaint, arguing that as to the quiet title action, where the Complaint rests on the speculative contentions of an unrecorded assignment of the mortgage and unrecorded authority to execute foreclosure documents, plaintiffs failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant's Memorandum in Support of Motion to Dismiss

---

[2]     Plaintiffs refer to "defendants" in this Count, but of course, the only defendant in this case is Fannie Mae.

Complaint [Docket No. 11] ("Def.'s Mem."), pp. 8, 10-11.   In addition, Fannie Mae asserted that plaintiffs have no standing to contest the Assignment of Mortgage by Countrywide to BAC or to rely on the Custodial Agreement to support their claim of an unrecorded assignment, their challenge to the foreclosure sale is untimely, and where they had defaulted on the note, they had unclean hands and were not entitled the equitable relief afforded by the claim. Id., pp. 8-13, Defendant's Reply Memorandum in Support of Motion to Dismiss Complaint [Docket No. 18], p. 7.  As for the slander of title claim, Fannie Mae submitted that it must be dismissed because plaintiffs had not stated any facts to support the elements of the claim.  Def.'s Mem., pp. 16-18.   Finally, because plaintiffs' substantive claims failed, their declaratory judgment action must also be dismissed.  Id., pp. 13-16.

For the reasons set forth below, the Court concludes that plaintiffs fail to state a claim for relief and therefore, Fannie Mae's motion to dismiss should be granted.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in

Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S., at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). "The court, however, 'may consider some

materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

With these standards in mind, the Court turns to the defendant's motion to dismiss.

## III.   DISCUSSION

### A.   Quiet Title

In Minnesota, "[a]ny person in possession of real property personally. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. § 559.01.

In their response to Fannie Mae's motion to dismiss the quiet title claim, plaintiffs first contended that as their suit originated in state court, this claim could not be judged under federal pleading standards; rather, all they had to plead under Minnesota law was that they were in possession of the Property and Fannie Mae had a claim adverse to them.  See Memorandum in Opposition to Defendant's Motion to Dismiss [Docket No. 16] ("Pl.'s Mem."), pp. 9-11.  Further, plaintiffs maintained that the Federal Rules of Civil Procedure did not alter the burden of proof of a state law claim.  Id., pp. 11-12.

Consequently, the Court could not apply Rules 8 and 12(b)(6) to determine which party has the burden of proof – this is substantive issue that has already been decided under state law. Id., p. 12.

This Court rejects plaintiffs' argument that the Court should apply the Minnesota state court pleading standards to their quiet title claim.  Plaintiffs' counsel made this exact argument in the past, and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. JPMorgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, N.A., 518 F. App'x 498, 501 (8th Cir. 2013); 518 (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortgage Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in Karnatcheva settled the "burden of proof" argument in a quiet title action advocated by plaintiffs.  704 F.3d at 548.  As the court explained in Gharwal:

> Karnatcheva rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.  Karnatcheva, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an

9

> objectively reasonable basis for believing that the
> defendant's asserted interest in the property is invalid." <u>Welk
> v GMAC Mortg., LLC</u>, 850 F. Supp.2d 976, 988 (D. Minn.
> 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).   Here, plaintiffs
> quiet title claims are based only on conclusory statements
> and speculation, but no facts.   The claim fails under Rule
> 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standard governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

The "gist" of plaintiffs' quiet title claim is that where there was an unrecorded assignment of mortgage to Fannie Mae prior to the foreclosure sale and there is no evidence that Countrywide had the authority to execute the Assignment of Mortgage to BAC under Minnesota law, the foreclosure of their Property by BOA is void.  This theory fails for a multitude of reasons.

First, the fact of plaintiffs' possession of the Property and conclusory statements that Fannie Mae's adverse claims are invalid are insufficient to state a claim for relief. <u>See</u> <u>Karnatcheva</u>, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet-title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); <u>Yang Mee Thao-Xiong v. American Mortg.</u> <u>Corp.</u>, Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting <u>Novak v. JP Morgan Chase Bank, N.A.</u>, Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), <u>aff'd</u>, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable

inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'")

In the instant case, plaintiffs made wholly unsupported statements about an unrecorded assignment to Fannie Mae, and the alleged lack of recorded documents showing the ability of entities to act as attorneys-in-fact.  See Complaint, ¶¶ 7, 9, 11, 12, 19, 24-25.  The Eighth Circuit and the courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards articulated in Iqbal and Twombly.  See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2013 WL 1688903 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortgage Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortgage Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013).

Contrary to plaintiffs' conclusory allegations, the documents referenced in and attached to the Complaint show an unbroken chain of title from Countrywide to BAC and to BOA, as successor by merger to BAC (pre-foreclosure), and from BOA to Fannie

Mae (post-foreclosure).  <u>See</u> Complaint, Ex. 1 (Mortgage), Ex. 4 (Assignment of Mortgage), Ex. 5 (Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage), Ex. 6 (Sheriff's Certificate and Foreclosure Record), Ex. 7 (Assignment of Sheriff's Certificate).  The Sheriff's Certificate of Sale is <u>prima</u> <u>facie</u> evidence that BOA (the foreclosing entity) complied with all legal requirements regarding the foreclosure, and that the foreclosure and sale were proper.  Minn. Stat. § 580.19.  Plaintiffs recited no facts in their Complaint to rebut this evidence, and none of the documents attached to their Complaint support a claim that there was an unrecorded assignment between MERS and Fannie Mae prior to the foreclosure sale.

For example, the MERS "lookup" that plaintiffs describe as showing that Fannie Mae was "the investor" that owned the mortgage before the foreclosure, was printed on July 25, 2013, well after the December 20, 2012 Sheriff's Sale for the Property and the March 8, 2013 Assignment of Sheriff's Certificate to Fannie Mae.  This report does not remotely support plaintiffs' theory that there was an unrecorded assignment of the mortgage from MERS to Fannie Mae <u>before</u> the foreclosure.  All the document reflects is that as of July 25, 2013, Fannie Mae had acquired its interest in the Property, which was <u>after</u> the foreclosure sale and is entirely consistent with the Assignment of Sheriff's Certificate that occurred in March 2013.  <u>See</u> <u>Welk v. Federal Nat'l Mortgage Ass'n</u>, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *3 (D. Minn. May 17, 2013) (rejecting the same "evidence"—consisting of a screen shot of the MERS loan information page— and noting "[i]t is no surprise that Fannie Mae is listed as having an interest in October 2012—Fannie Mae acquired an interest from Wells Fargo in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011"); <u>Butler v. Fed.</u>

Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *3 (D. Minn. May 15, 2013) (rejecting the same "evidence"–a screen shot from the MERS loan finder website showing Fannie Mae as the "investor" for the mortgage, and stating "this screen shot is only evidence that, on October 3, 2012, Fannie Mae had an interest in the mortgage. It does not establish the allegations in the Complaint; rather, it is just the sort of 'shot in the dark' allegation that does not meet Rule 8's pleading standards.  Thus, not only is there no factual support for plaintiffs' bald assertions, the record shows the exact opposite – the foreclosure and the subsequent quit claim deed were proper."). Thus, not only is there no factual support for plaintiffs' bald assertions, the record shows the exact opposite – the foreclosure and the subsequent assignment of the Sheriff's Certificate were proper.[3]

Likewise, plaintiffs' reliance on the excerpts from Fannie Mae's Custodial Agreement does not overcome the deficiencies in plaintiffs' Complaint, much less support a claim that there was an unrecorded assignment to Fannie Mae before the Assignment of the Mortgage in June 2011.  The Custodial Agreement is an unexecuted form document that makes no reference to MERS, Countrywide, plaintiffs, or to plaintiffs' mortgage. Id., Ex. 3 (form Custodial Agreement).  Accordingly, this Court has no basis for assuming that this document applies to the mortgage in this case.

In any event, the language relied upon by plaintiffs from the Custodial Agreement does not provide a plausible inference that an assignment to Fannie Mae actually occurred prior to the foreclosure.  The Agreement does not require an actual and

---

[3]     Because there is no factual support for plaintiffs' bald assertions regarding an unrecorded assignment to Fannie Mae, plaintiffs' contention that there is no record of authority from Fannie Mae to foreclosure counsel, Shapiro, authorizing the foreclosure (Pl.'s Mem., p. 14) also fails.

present assignment from the servicer to Fannie Mae. It simply requires the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Fannie Mae.

The facts before the Court indicate that Countrywide received from plaintiffs a mortgage that was recorded; Countrywide assigned the mortgage to BAC, which was recorded; BOA was the successor by merger to BAC; and there is no evidence of any further transfers of interests in the Property in the record until after the foreclosure sale, at which time Fannie Mae received an Assignment of Sheriff's Certificate from BOA. As such, it is implausible that Fannie Mae had received an assignment of the mortgage before the foreclosure. See Welk, 2013 WL 2155463, at *3 ("As Fannie Mae points out, such an assignment would be illogical, because, if Wells Fargo had assigned Mr. Welk's mortgage to Fannie Mae before 2011, there would be no reason for Wells Fargo to deed the property to Fannie Mae in 2011.").

Third, even if the Custodial Agreement governs plaintiffs' mortgage, plaintiffs lack standing to challenge a failure of any assignment required by this document, as they are not parties to it. See Segura v. Fed. Nat'l Mortg. Ass'n, Civ. No. 13-531, 2013 WL 3034096, at *3 (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative. The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that

failure would be for Fannie Mae, not the Seguras, to prosecute."); <u>Lara</u>, 2013 WL 3088728, at *3 (finding that the Seller/Servicer Guide "is at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Plaintiffs and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not Plaintiffs, to prosecute.").

Similarly, plaintiffs have no standing the challenge the assignment from Countrywide to BAC (and ultimately to BOA because of the merger of BAC and BOA.) <u>See</u> <u>Quale</u>, 2013 WL 3166584, at *1 ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative.") (citations omitted); <u>Forseth v. Bank of America, N.A.</u>, Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation. But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records

belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims"); Kaylor v. Bank of America, N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); see also Sovis v. Bank of New York Mellon, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); Gerlich v. Countrywide Home Loans, Inc., Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2 (D. Minn. Sept. 7, 2011) (borrower lacks standing to challenge assignment of mortgage)); Kebasso v. BAC Home Loans Servicing, LP, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the

mortgagor, and he could not object.'") (quoting Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 500 (Minn. 2009)).

Fourth, plaintiffs' assertion that the foreclosure is void under Minn. Stat. § 580.05 because there is no record of a power of attorney-in-fact for BAC to act for Countrywide with regard the June 30, 2011 Assignment of Mortgage (Pl.'s Mem., p. 14), is without merit, as it is premised on the faulty premise that there is no record authorizing BAC to act as Countrywide's attorney-in-fact simply because they allege it is so.  See Pope, 2013 WL 2251001, at *3 (The Popes allege that "[u]pon information and belief, Freddie Mac acquired its interest in the [ ] mortgage prior to the commencement" of foreclosure proceedings but "[n]o assignment of mortgage from Wells to Freddie Mac appears in the records of the Ramsey County Recorder."  [ ] This is precisely the kind of implausible allegation that Twombly and Iqbal prohibit. The Popes ask the Court to assume that an assignment occurred because they allege it occurred. But there is a more plausible explanation for the absence of any assignment in the Ramsey County records: there was no such assignment. The Court need not accept as true implausible allegations, as offered by the Popes here. To the extent their claims depend on this alleged unrecorded assignment, those claims fail to state claims on which relief can be granted.").

Moreover, Minn. Stat. § 580.05 is inapplicable as it only applies to the power to conduct a foreclosure, and not the power to make an assignment.  Section 580.05, provides:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such

> attorney be employed on behalf of such mortgagee or
> assignee by an attorney in fact, the attorney's authority shall
> likewise be evidenced by recorded power.

Minn. Stat. § 580.05 (emphasis added). There is nothing in this statute requiring that

that the power to execute an assignment by an attorney-in-fact be recorded. "Indeed,

Minnesota courts have recognized that the power to execute an assignment by an

attorney in fact need not be recorded to satisfy the foreclosure-by-advertisement

statute." Beecroft v. Deutsche Bank Nat. Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App.

2011), review denied (July 19, 2011).

Fifth, the Court concludes that the March 8, 2013 Assignment of Sheriff's

Certificate from BOA to Fannie Mae is irrelevant to plaintiffs' quiet title claim since

plaintiffs have not set forth a viable claim as to the validity of the foreclosure of the

Mortgage. As plaintiffs have not successfully challenged BOA's ability to foreclose the

mortgage, they have no interest in what remains of the mortgage after the foreclosure.

Finally, as Fannie Mae argued, a quiet title action is a proceeding in equity and

as such, a plaintiff who seeks to quiet title must come to court with clean hands.

Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3

(D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013); Yang Mee Thao-Xiong,

2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage

prevented her from seeking equitable relief); Stilp v. HSBC Bank USA, N.A., Civil No.

12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. March 20, 2013) ("Plaintiffs

defaulted on their mortgage loan over four years ago. They seek to declare their

mortgage invalid after defaulting; as such, they come to the present case with unclean

hands.") (citation omitted).

18

Having defaulted on their mortgage, plaintiffs come to Court with unclean hands and are precluded from pursuing a quiet title claim. Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn. 1937)) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim).

For all of these reasons, plaintiffs' quiet title claim should be dismissed.

**B.** **Slander of Title**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages. Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted). To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [ ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'" Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).

Here, plaintiffs not only did not allege that Fannie Mae acted with malice, but more significantly, they alleged no facts from which this Court could even infer that Fannie Mae made a false statement or acted maliciously.   Rather, plaintiffs only asserted that Fannie Mae "knew or should have known" that unspecified documents were false.  See Complaint, ¶ 41.  These allegations standing alone, without any factual support, fail to state a slander of title claim.   See Ko, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); Lara, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").   In any event, as this Court has concluded that plaintiffs have failed to state a claim that there was unrecorded assignment of the mortgage made to Fannie Mae prior to the foreclosure sale, it follows that no false statement by Fannie Mae was made.

Additionally, even assuming that documents recorded as to the Property are technically false, this does not amount to a cloud on the title of the Property where plaintiffs have clouded the title based on their default.  See Pope, 2013 WL 2251001 at *4 ("An unauthorized assignment may be technically false, but it does not cloud the title to property on which the mortgagee has undisputedly defaulted.  The only cloud on the title of the Popes' property is a cloud of their own making: they did not make the

payments due under their mortgage and as a result, they lost their property through foreclosure.").

For all of these reasons, Fannie Mae's motion to dismiss plaintiffs' slander of title claim should be granted.[4]

### C.   Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[they are] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

---

[4]    The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); see also Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich, 2012 WL 3612023, at *6.  Fannie Mae did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Defendant Federal National Mortgage Association's Motion to Dismiss [Docket No. 9] be **GRANTED**.

2.     This matter be dismissed with prejudice.[5]

Dated: December 27, 2013

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[5]     "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."   Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  That is the case here.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 10, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.